JONESBORO, LAKE CITY & EASTERN RAILROAD COMPANY *v.* WATTS.

Opinion delivered November 19, 1896.

1.  CONTRACT—ENFORCEMENT.—Where a debtor undertook to pay its debt in services within a certain period of time, and agreed that, in the event it refused to pay in that manner, the creditor might demand payment in money, the courts, upon the debtor refusing to pay in services, will enforce a recovery of the amount of the debt in money, without requiring the creditor to wait until expiration of such time.   (Page 550.)

2.  ESTOPPEL—INCONSISTENT POSITIONS.—Where a party in his dealings with another deliberately assumed a certain position, the other will be protected in acting thereon.   (Page 552.)

Appeal from Craighead Chancery Court, Jonesboro District; *Edward D. Robertson,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

On April 27, 1897, the plaintiff, F. C. Watts, and the defendant, Jonesboro, Lake City & Eastern Railroad Company, entered into a written contract whereby it was agreed that the plaintiff should furnish to the defendant at a certain price all cross-ties needed in the construction of defendant's railroad from Nettleton to Lake City, Ark., $500 worth of said ties, according to the fixed price, to be furnished free of charge as a donation to the railroad company; that the defendant company should deliver to plaintiff enough of its twenty-year, interest-bearing bonds to equal the price of the ties furnished, and that after the railroad was put in operation defendant should transport for the plaintiff ties at two and a half cents each and piling at five dollars per car load and charge the same against the indebtedness due to the plaintiff for ties furnished until such indebtedness, with interest thereon, should be paid; and that for a period of ten years thereafter the plaintiff should have the exclusive privilege of shipping ties and piling over the railroad at the aforesaid rates. The contract further provided that when the freight charges should equal the indebtedness of defendant to plaintiff for ties furnished in construction of the railroad, the plaintiff should surrender the bonds delivered to him by defendant.

On April 16, 1898, the plaintiff and defendant entered into another contract for ties to be used in construction of the railroad from Lake City to Leachville, the contract being similar in terms to the former one, except as to price of ties, and it contained a similar provision with reference to exclusive privilege of shipping ties and piling over defendant's railroad for a period of ten years from that date.

Attached to each of these contracts there is an assignment in writing executed by the plaintiff to Sedgwick & Company of the exclusive privilege granted in the contract of shipping ties and piling, and also the written indorsement of the defendant consenting to such assignment. These written assignments are not dated, but are shown to have been executed about the time of the execution of the second contract or shortly thereafter.

On June 23, 1900, plaintiff and defendant entered into a third contract reciting the execution of the two preceding ones, the delivery of the bonds provided for therein and the furnishing of ties by plaintiff thereunder, and that defendant was then indebted to plaintiff for ties furnished in the sum of $6,445.66 and "an additional amount due from said company to said F. C. Watts upon account for cross-ties to be hereinafter ascertained." After the recital of these conditions, the contract provided for the surrender of said bonds by plaintiff, and the defendant acknowledged itself to be indebted to plaintiff in the sum of $15,000, conditioned upon its faithful performance of said two contracts "with reference to freight-haul privilege, the payment of interest and other things as in said contracts set forth."

This contract concluded with the following clause: "But, should the railroad company fail to perform its said contracts heretofore executed with the said F. C. Watts in manner and form, conditions and privileges therein contained, then it is understood that he shall have an immediate right of action against said railroad company upon this bond, to the extent and for the amount, including damages, if any, to which the said F. C. Watts may be entitled to under said contracts and agreements heretofore referred to and now made a part of this obligation, except that it is mutually understood that this obligation shall in no way impair, alter or change in any particular the contracts and agreements heretofore executed by this company with the said F. C. Watts."

After the execution of the assignments of the shipping contracts by the plaintiff to Sedgwick & Company, the latter continued to ship ties under the contracts, and the freight charges were debited by the defendant against the plaintiff until its said indebtedness to plaintiff was reduced to $5,860.66, the amount claimed in this action, and until litigation arose between Sedgwick & Company and the plaintiff, and the latter made objection to any further debit against his account for shipments made by Sedgwick & Company.

On September 6, 1900, Sedgwick & Company instituted suit in the Craighead Chancery Court against Watts to recover the sum of $15,287.04 alleged indebtedness. Allegations were filed in that suit against the railroad company as garnishee to the effect

that said garnishee was indebted to Watts, and had in its possession property belonging to him of the value of $7,500, and a writ of garnishment was duly issued and served on the company as such garnishee. No answer was made by the garnishee in that suit, and on April 22, 1903, the court rendered a decree in favor of the plaintiff therein, Sedgwick & Company, against Watts for recovery of the sum of three hundred dollars. This part of the decree was entered by consent of parties, but the court further found from the evidence, and decreed, that the said shipping contracts had been assigned absolutely by Watts to Sedgwick & Company, and not as collateral security, as claimed by the former, and that said contracts were the property of Sedgwick & Company.

On December 13, 1900, the plaintiff herein first made objection to the debiting against his account with the railroad company pending said litigation of the freight charges on shipments by Sedgwick & Company, and he so notified both Sedgwick & Company and the railroad company by letters on that date. He asserted in those letters, which were written by his attorneys, that the contracts had been assigned to Sedgwick & Company as security for a debt which had been paid, and that neither party had the right to use the shipping contracts until the court should finally adjudge in said suit who was the real owner. The same objection was renewed in a letter dated September 16, 1901, written by Watts's attorney to the railroad company, but on November 14, 1901, Watts wrote a letter to the railroad company demanding that the freight charges for shipments made by Sedgwick & Company be debited against his account with the railroad company. There is also testimony tending to prove that about the date of the last mentioned letter Watts called upon the general manager of the railroad company and made the same demand contained in this letter, and upon the refusal thereof asked permission to ship ties over the railroad under the contract and have the freight charges debited against his account for ties previously furnished. This request was also refused by the company, and the pendency of the litigation between Watts and Sedgwick & Company was given as a reason for the refusal of both requests.

On February 27, 1902, Sedgwick & Company addressed to

the general manager of the railroad company a written communication as follows:

"Dear Sir:—Mr. F. C. Watts still owes us about $600, and we are nearing a settlement of our matters.  Can we hold back freight charges and, instead of paying it to your company, give Mr. Watts credit for it on his account, providing Mr. Watts is willing to permit such arrangement to be made?"

To this communication the railroad company, through its general manager, made reply as follows:

"Gentlemen:—Replying to your favor of the 27th ult. with reference to accepting $600 on Watts, will say we can not do this, as it would be in violation of our contract.  In order for Watts to get the benefit of the freight money, it would be necessary for him to hold the franchise, but, after selling or transferring same, it gives him no right whatever to collect, and, so long as you hold the franchise, we will expect the freight paid to us or our agents in cash."

S. K. Lenoir, a witness introduced by the defendant, testified that he was auditor of the defendant railroad company in June, 1903, and called upon the plaintiff Watts at his place of business in Jonesboro for the purpose of paying him the annual interest on the indebtedness of the company to him, and that while in conversation with plaintiff concerning the shipment of ties, informed him that the general manager had consented for him to ship ties over the road.  He testified that plaintiff replied that he had nothing to ship then—that Sedgwick & Company had "taken all his stuff away from him."

The plaintiff Watts instituted this suit in equity on November 29, 1904, against the defendant railroad company to recover the said balance of $5,880.66 due for cross-ties furnished by him in construction of the railroad, and interest thereon.  He alleged in his complaint that he had fully complied with all the terms and conditions in said contracts, but that the defendant had violated the same by refusing to apply on said indebtedness the freight charges earned on shipments made by Sedgwick & Company and by refusing to permit the plaintiff to ship ties over the road and apply the freight charges therefor on said indebtedness.  He also alleged that at the time of the assignment of the two contracts by him to Sedgwick it was agreed between the parties hereto that

from that time forward all sums becoming due to appellant for transporting ties and piling over its road for Sedgwick should be applied to the indebtedness from appellant to appellee, and that since that time Sedgwick had shipped both ties and piling, the freights upon which amounted to several thousand dollars, the amount not being stated, and that appellant had refused to credit the freights earned upon the indebtedness due from appellant to appellee, although requested so to do both by appellee and Sedgwick.

The defendant answered, admitting the amount of indebtedness for ties furnished, but pleaded that under the contracts the same was payable in freight charges, and alleged that it had always transported all of the ties and piling which were offered to it by him for that purpose, and had uniformly charged the freights thus earned against him on the indebtedness, and that it was ready and willing to continue to transport such material for appellee at such times and in such amounts as he might choose to offer the same, in compliance with its contract, in the manner and form in which it agreed to discharge the indebtedness.

The defendant also denied that it was agreed between the parties that freight charges earned on shipments made by Sedgwick & Company should be debited against the indebtedness to plaintiff for ties furnished, or that Sedgwick & Company or plaintiff had ever requested that this be done.

The chancellor rendered a final decree in favor of the plaintiff for recovery of amount of said debt, with interest, and the defendant appealed to this court.

*E. F. Brown* and *Block & Sullivan,* for appellant.

1. In this case there is no date fixed by the contract for the discharge of the obligation. The services were not to be rendered except as appellee was in readiness to have it done. Both by the terms of the contract itself as well as by the nature of the services to be rendered the bare lapse of time could not give rise to a default. 5 Ark, 318; 8 Ark. 124; 30 Ark. 308; 31 Ark. 319; 37 Mich. 402; 34 Minn. 497; 148 Pa. St. 69; 7 Wash. 316; 16 Ind. 399; 24 Mo. App. 279; 21 Am. Dec. 422.

2. If the agreement allowing appellee exclusive privilege of shipping ties and piling over appellant's road were enforceable,

which appellant denies, still there could be no breach of contract in its shipping them for Sedgwick. What appellee had procured to be done, or consented to, he could not complain of as a breach. 7 Ark. 123; 38 Ark. 174; 29 Am. & Eng. Enc. of Law (2 Ed.), 1098, *et seq.* As a common carrier, appellant could not agree to carry one class of freight for one person, and refuse to carry the same for another, neither could it demand of one a certain rate, and a higher rate of another for carrying the same class of freight. Kirby's Digest, § 6722 *et seq.;* 55 Ark. 65; 64 Ark. 271; 73 Ark. 374; 118 Fed. 169; 9 Cyc. 498.

3. If appellant was obligated to pay appellee the money received from Sedgwick, as received, its failure to do so would entitle appellee to judgment only for the amount received, and not for the whole demand. But no express agreement obligating appellant to make such disposition of Sedgwick's freights was proved, and none could be implied. If any such agreement were proved or implied, it must yield to the express provisions of the subsequent contract to the contrary. 68 Ark. 524; 67 Ark. 558; 7 Am. & Eng. Enc. of Law (2 Ed.), 122, 123; 9 Cyc. 595; 46 Ark. 94.

4. Where a person has acted, or refrained from acting, in a particular manner upon the request or advice of another, the latter is estopped to take any position inconsistent with his own request or advice to the prejudice of the person so induced to act. 16 Cyc. 786. Therefore appellee, having asserted that neither he nor Sedgwick could ship under the contract pending the litigation, could not afterwards repudiate his acts and assertions, and insist that appellant's acquiescence in his position was a breach of its contract with him. Again, at the institution of the suit, Sedgwick garnished appellant, and that garnishment pended until the case closed. After service of garnishment and prior to filing answer, if appellant had accepted and shipped material for appellee, its liability as garnishee would thereby have become fixed. Kirby's Digest, § 3698; 104 Mass. 164; 4 Gray, 235; 53 Minn. 327; 129 Mo. 663. Appellant's postponement of further performance of the contract until the termination of the litigation could not be treated as a breach of the contract. 31 Ark. 319.

*Lamb & Gautney* and *Hawthorne & Hawthorne,* for appellee.

1.   It can not be said that the exclusive right to transport ties and piling over the line, and the price at which they should be shipped, did not enter into consideration and induce appellee to accept the method of payment in services; if so, appellant's right to pay in that manner is not enforceable.   64 Ark. 398; 25 Ark. 350; 3 Fed. 430; 19 L. R. A. 371, and notes.

2.   Upon the adjustment of the differences between appellee and Sedgwick, the latter requested appellant to allow him to credit $600 due on freight shipments to appellee, instead of paying it to appellant.   This the appellant refused.

3.   Appellant has made no attempt to show that it was injured or prejudiced in any way by reason of the two positions assumed by appellee, and in the absence of such showing he is not estopped.

4.   Appellant did not assign the garnishment proceedings as a reason for refusing to permit appellee to ship ties over its line.

5.   Appellant, by reason of its conduct is estopped to insist upon being allowed to pay the amount due to appellee in hauling freight.

McCULLOCH, J., (after stating the facts.)   The amount of appellant's indebtedness to appellee is undisputed, and the contract provides how it shall be discharged.   The obligation of appellant under the contract is not, primarily, to pay in money but to transport cross-ties and piling over its railroad at certain stipulated freight rates until its indebtedness to appellee should in that manner be fully discharged.   The contract provides for payment in money only in the event of the failure of appellant to perform its contract with reference to payment in freight charges.   The contract, according to its express terms, provides for payment in services, and also provides that in the event of refusal of the obligor to pay in that manner the obligee may demand payment in money, so it is plain that, if appellant committed a breach of the contract by refusing payment in services, appellee has the right to recover in money the amount of the debt.   *Johnson* v. *Dooley,* 65 Ark. 71; *Gist* v. *Gans,* 30 Ark. 285; *Pierce* v. *Marple,* 148 Pa. St. 69.

The contract in this case differs somewhat from the contracts generally found in the adjudged cases on the subject in that it fails to state, expressly, a date for the payment of money in the

event of failure to pay in services; but we think the only reasonable interpretation of the contract is that payment in money is recoverable immediately upon refusal to pay in services as stipulated.    The last contract entered into between the parties reads that, upon failure of the company to perform its contract, "then it is understood he shall have an immediate right of action against said railroad company upon this bond to the extent and for the amount including damages, if any, to which the said F. C. Watts may be entitled under said contracts and agreements heretofore referred to."    Now, appellee under the contract had ten years from date within which he could require satisfaction of the indebtedness in freight charges, but immediately upon the refusal by appellant to pay in that manner his right of action for money became complete.    He was not bound to await the expiration of the ten-year period or to repeat his demand for payment in services.    So the only question of fact which we have before us for determination is whether or not appellant has broken its contract by refusing to pay in freight charges in the manner provided in the contract.    The issue is succinctly stated by counsel for appellant as follows:    "Unless there can be found in the record testimony showing a breach of the contract by appellant—an unjustifiable refusal to render the stipulated services—the decree below is wrong, and must be reversed."

It is urged by appellee that a breach of the contract was first committed by appellant when it refused, in November, 1901, to debit the Sedgwick & Company freight charges against appellee's account for ties furnished, or to permit appellee to ship ties and apply the freight charges on his indebtedness.    This demand and refusal is denied by Mr. Kerfoot, the manager of the railroad, upon whom the demand was made, and who, it is claimed, refused to accede to it, but his denial is unimportant.    Appellee's own testimony shows that Kerfoot gave as a reason for his refusal at that time the pendency of the litigation between Sedgwick & Company and appellee.    We think that reason was perfectly sound, and afforded ample justification for refusal at that time either to debit the Sedgwick freight charges or to allow appellee to ship and also debit the freight charges.    Sedgwick & Company had sued appellee for a sum of money largely in excess of the amount owing by appellant to him, and had caused appellant to

be summoned as garnishee to answer in what sums it was so indebted to appellee. Sedgwick also asserted in that suit all rights absolutely and exclusively under the shipping franchise, as the parties term it. Appellee had repeatedly objected to appellant debiting the Sedgwick freight charges on his account, and had, through his attorneys, in written communications deliberately assumed the position that during the pendency of the litigation neither he nor Sedgwick & Company had any right to use the so-called franchise in any way or enjoy its benefits. Then how can it be said that appellant was not justified, under those circumstances, in refusing to make payments in services whilst the litigation was pending? Appellant was under summons as garnishee to answer for all its indebtedness to appellee, and dared not discharge it by direct payment to appellee in any manner. To have done so would have been at its own peril and in violation of the writ of garnishment. If that were all, we would have no hesitancy in saying that there has been no breach of the contract by appellant, and that there can be no recovery of money by appellee.

But appellant was not so fortunate in its subsequent refusal to pay in services upon demand made by Sedgwick & Company in the letter dated February 27, 1902, which asks permission, upon the consent of appellee, to debit their freight charges against appellee's account. Appellant not only refused the request, but seems to have assumed the technical position that appellee could get no benefit at all from the shipping contract because of his assignment thereof. It assumed that appellee must own the shipping privileges before he could collect his debt, and that he must lose his debt because he had assigned the contract and could not ship ties and piling.

The written assignment indorsed on the contract does not in terms provide that the freight charges on shipment made by Sedgwick should be applied on the debt due appellee from the railroad company, but such is clearly implied from the very nature of the agreement. It is probable that the contract for exclusive shipping privileges was void and unenforcible, though we need not determine that question now. All parties treated it as valid, and the assignment of the contract was executed by appellee to Sedgwick, and the same was approved by appellant in recogni-

tion of its validity. Now, if the contract for exclusive shipping privilege was valid, and appellee assigned it, as contended by appellant, without any agreement, express or implied, for the application of the freight charges on the Sedgwick shipment on the company's indebtedness to him, he thus robbed himself of any opportunity at all for the collection of his debt from the company. We can not presume that he intended to do any such thing. Even if we should say that the grant of the exclusive shipping privileges was void, yet, inasmuch as the parties treated it as valid, we must view it in that light in determining what they intended by the execution and approval of the assignment, and must assume that it was not thereby intended that appellee should be deprived of the opportunity of collecting his debt from appellant, which then amounted to a large sum. We should rather presume that the intention was to protect appellee in his rights, and the fact that the consent of the railroad company to the assignment of both contracts was sought and obtained makes it certain that such was the intention. The fact that the parties acted upon that theory, and that for a considerable time, until the disagreement arose between appellee and Sedgwick, the freight charges were applied on the debt of appellee, gives additional force to the presumption that it was so intended at the time of the execution by appellee and the approval by appellant of the written assignments to Sedgwick.

Of course, appellee had the right, so far as appellant was concerned, to stop the application of such payments; but as long as he and Sedgwick agreed upon said application, it did not lie with appellant to object. That was the only method provided in the contract for the payment of appellant's debt to appellee, or rather it was the primary method, and appellant did not have the right to refuse that method without rendering itself liable for payment in money. The refusal of appellant on this occasion to comply with the contract was therefore without legal justification or excuse, and, having refused to pay the debt due to appellee in services as stipulated in the contract, it must pay in money.

The chancellor was right in so holding, and his decree is affirmed.

WOOD J. not participating.